IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ALEXSAM, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Case No. 2:07-cv-420 |
| v. | § | |
| | § | The Honorable C. Everingham |
| IDT CORPORATION, | § | |
| | § | |
| *Defendant.* | § | |

### IDT'S BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW ON ISSUE OF DAMAGES

Defendant IDT Corporation ("IDT") submits this brief in support of its motion for judgment as a matter of law on the issue of damages pursuant to Fed. R. Civ. P. 50. As set forth below, Plaintiff Alexsam, Inc. ("Alexsam") has failed to establish a legally sufficient evidentiary basis for a reasonable jury to find that IDT's alleged infringement of the patents-in-suit resulted in any damages to Alexsam.

### I.       LEGAL STANDARD

Federal Rule of Civil Procedure 50(a)(1) provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.[1]

In the Fifth Circuit, judgment as a matter of law may be granted if "there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did."[2]

---

[1] Fed. R. Civ. P. 50(a)(1).

1

## II.   ARGUMENT

A. <u>Alexsam May Not Rely on the Entire Market Value Rule Because It Fails to Establish How the Technology Underlying the Patents-In-Suit Enhance Market Demand For the Accused Products.</u>

The opinion of Alexsam's damages expert, Mr. Bakewell, seeks to establish damages by multiplying a royalty percentage (roughly 12%)[3] by IDT's total revenue associated with its accused products. In his testimony, Mr. Bakewell presents this analysis in terms of revenue per transaction. However, in order to determine revenue per transaction, he starts with total revenue and then divides by the number of transactions.[4] Based on this approach he determines $6.04 of total revenue per accused IDT phone card and $4.02 of total revenue per accused IDT gift card.[5] This calculation, according to Mr. Bakewell, produces a royalty of $.75 with respect to the accused IDT phone cards and a royalty of $.50 with respect to the accused IDT gift cards.[6]

Mr. Bakewell admitted during the trial that he included all of IDTs revenue associated with the accused products in determining the revenue to multiply by his royalty percentage.[7] However, in his testimony he did not show what part of the revenue of the accused IDT products is attributable to the technology that underlies the patents-in-suit.

A reasonable royalty that is calculated based on a percentage of total revenue must meet the requirements of the entire market value rule. According to the Federal Circuit's recent decision in *Uniloc USA, Inc. v. Microsoft Corp.*, "The entire market value rule allows a patentee to assess damages based on the entire market value of the accused product <u>only</u> where the

---

[2] *Summit Tech., Inc. v. Nidek Co.*, 363 F.3d 1219, 1223 (Fed. Cir. 2004) (holding that motions for judgment as a matter of law are not unique to patent law and, thus, are reviewed under the laws of the regional circuit.); *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 427 (5th Cir. 2003).
[3] Exhibit A (Trial Tr., 78:5-19; 124:20-125:14, Feb. 11, 2011 Morning Session.)
[4] Exhibit A (Trial Tr., 117:25-118:8, Feb. 11, 2011 Morning Session.)
[5] Exhibit A (Trial Tr., 71:22-72-3, 117:14-117:24, Feb. 11, 2011 Morning Session.)
[6] Exhibit A (Trial Tr., 78:5-19, Feb. 11, 2011 Morning Session.)
[7] Exhibit A (Trial Tr., 117:25-118:8, Feb. 11, 2011 Morning Session.)

patented feature creates the 'basis for customer demand' or 'substantially create[s] the value of the component parts.'"[8] The court in *Uniloc* states further that the entire market value rule:

> is derived from Supreme Court precedent requiring that "the patentee . . . <u>must in every case give evidence</u> tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, <u>and such evidence must be reliable and tangible, and not conjectural or speculative</u>," or show that "the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature.[9]

Alexsam offered no evidence at trial to establish either (a) that the value of the technology underlying the patents-in-suit creates the basis for customer demand of the accused IDT products or (b) that this technology substantially creates the value underlying the accused IDT products' features.

Alexsam has therefore failed to meet the required standard for application of the entire market value rule. Therefore, its damages calculation should be rejected as a matter of law.

B. <u>Alexsam's Damages Expert Fails To Establish That The License Agreements He Relies On Are Comparable to the Hypothetical License Agreement Between Alexsam and IDT.</u>

Mr. Bakewell based his damages opinion on a review of several license agreements entered into by Alexsam. However, he offered insufficient evidence to establish the comparability of the license agreements on which he relies with the hypothetical license agreement between Alexsam and IDT. For example, several of the license agreements involve licensees who are card transaction processors or network providers. These licensees bear little resemblance to IDT, in terms of their respective businesses. Another of these agreements

---

[8] No. 10-1035, slip op. at 48 (Fed. Cir. Jan. 4, 2011), *quoting Lucent Techs., Inc. v Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1549-50 (Fed. Cir. 1995) (emphasis added).
[9] *Id.*, *quoting* Garretson v. Clark, 111 U.S. 120, 121 (1884) (emphasis added).

relates solely to reloadable debit cards, even though none of the accused IDT products are reloadable debit cards.

Consistent with the opinion of the Federal Circuit in *Uniloc*, for a license agreement with a third party to have probative value, the subject matter of the agreement must bear some resemblance to the subject matter of the hypothetical license under consideration.[10] The license agreements Mr. Bakewell relied on are not sufficiently comparable to the hypothetical license between Alexsam and IDT, and therefore are insufficient to establish a reasonable royalty.

    C. <u>Alexsam's Damages Expert Fails To Tie The Royalty Rate He Applies To The IDT Accused Transactions With the Royalty Rates Implied By the Third Party Licenses He Reviews.</u>

Mr. Bakewell's analysis of the Alexsam licenses he reviewed produces a very broad range of royalty rates – 2% to 67% of relevant revenue. His testimony fails to establish why, amongst such a broad range of choices, 12% of revenue is the correct rate. He provides no reliable evidence to establish why Alexsam and IDT would have agreed upon that rate, other than that it falls with the range of 2% to 67% he identifies. Alexsam has therefore not met its burden to establish a reasonable royalty by offering probative and reliable evidence of the rate the parties would have agreed to.

### III.    <u>CONCLUSION</u>

In a patent infringement case, the patentee bears the burden of proving damages.[11] To properly carry this burden, the patentee must "sufficiently [tie the expert testimony on damages] to the facts of the case."[12] Alexsam's damages expert has relied on an entire market value analysis in reaching his opinion on damages, but he doesn't offer sufficient evidence to establish

---

[10] No. 10-1035, slip op. at 43-44, *discussing ResQNet.com, Inc. v Lansa, Inc*., 594 F.3d 860 (Fed. Cir. 2010) and *WordTech Systems, Inc. v. Integrated Networks Solutions, Inc*., 609 F.3d 1308 (Fed. Cir. 2010).
[11] *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).
[12] *Daubert*, 509 U.S. at 591 ("An additional consideration under Rule 702—and another aspect of relevancy—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.") (citing *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)).

what portion of the accused product revenue would be attributable to the technology underlying the patents-in-suit.  Under the entire market value rule set forth in the *Uniloc* decision, no reasonable jury could find that the evidence proffered by Alexsam at trial was sufficient to support a claim of damages based on IDT's alleged infringement of the patents-in-suit.

Nor does Alexsam's expert offer sufficient evidence to establish that he has relied on comparable agreements in his analysis, or that the results of his analysis produce a reasonable royalty rate.

For these reasons, Alexsam's damages calculation should be rejected as a matter of law.

Respectfully submitted,

Dated:  February 11, 2011                                  By:       /s/ M. Dru Montgomery

Edward A. Pennington
Sid V. Pandit
Stephanie D. Scruggs
Sean T. Phelan
Timothy J. Murphy
MURPHY & KING, P.C.
1055 Thomas Jefferson Street, N.W.
Suite 400
Washington, DC 20007
Telephone:  (202) 403-2100
Facsimile:   (202) 429-4380
eap@murphyking.com
svp@murphyking.com
sds@murphyking.com
stp@murphyking.com
tjm@murphyking.com

J. Thad Heartfield
Texas Bar No. 09346800
M. Dru Montgomery
Texas Bar No. 24010800
THE HEARTFIELD LAW FIRM
2195 Dowlen Road
Beaumont, TX  77706
Telephone:  (409) 866-3318

Facsimile:   (409) 866-5789
thad@jth-law.com
dru@jth-law.com

Glen E. Summers
Sean C. Grimsley
Daniel R. Brody
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
1899 Wynkoop Street, 8th Floor
Denver, Colorado 80202
Telephone: (303) 592-3100
Facsimile: (303) 592-3140
glen.summers@bartlit-beck.com
sean.grimsley@bartlit-beck.com
dan.brody@bartlit-beck.com

***Attorneys for Defendant IDT Corporation***

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served electronically on all counsel who have consented to electronic service. Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5, all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 11th day of February, 2011.

/s/M. Dru Montgomery
M. Dru Montgomery